**MANTANONA**
LAW OFFICE

BankPacific Building, 2nd Floor
South Marine Drive
Tamuning, Guam  96910
Telephone: (671) 646-2001
Facsimile: (671) 646-0777

**FILED**
DISTRICT COURT OF GUAM

AUG 2 3 2005 *P*

Attorney for **Christopher M. Espinosa**

MARY L.M. MORAN
CLERK OF COURT

**DISTRICT COURT OF GUAM**
**TERRITORY OF GUAM**

UNITED STATES OF AMERICA )
)
vs. )
)
CHRISTOPHER M. ESPINOSA. et al. )
)
Defendant. )
_____

**Criminal Case No. 05-00053**

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SEVERANCE OF**
**DEFENDANTS**

MEMORANDUM OF POINTS AND AUTORITIES

STATEMENT OF FACTS

On June 16, 2005, the Guam Customs and Quarantine Agency, Drug Detection Dog was alerted to a package.  The package was then secured until a Search Warrant could be acquired.

On June 17, 2005, a Federal Search Warrant was acquired for the package, which revealed a white Crystalized Substance field-tested indicating a positive response for Methamphethamine.  The package was then repackaged and put back in the mail. The package was under surveillance by Law Enforcement Authorities to see who would pickup the package.

On June 18, 2005, the package was picked up by co-defendant Eric M. Aponik. Aponik and other co-defendant Elm were taken into custody once the package tracking device indicated that the package had been opened.

Co-defendant Aponik was advised of his Miranda Rights and questioned by the Law Enforcement Authorities in regards to the package. On that date, Aponik advised Law Enforcement Authorities that he received the package from defendant Espinosa. Aponik indicated that he would receive drugs in the mail from Espinosa who would send him the Methamphethamine from Las Vegas, Nevada.

Aponik then conducted several taped telephone conversations with defendant Espinosa.

Defendant upon the review of the discovery provided has determined that the majority and strongest evidence against defendant Espinosa is the incriminating statements by co-defendant Aponik. See Defendant Aponik oral interview attached and incorporated as Exhibit "1". See also Defendant Aponik's written statement attached and incorporated as Exhibit "2". Defendant Espinosa in order to properly defend himself needs to cross-examine co-defendant Aponik. Defendant further asserts that if the two parties are joined as defendants at trial he would be denied his constitutional right to confrontation. The defendant Espinosa respectfully request a severance from defendant Aponik.

## ARGUMENT

Rule 14(a) of the Federal Rule of Criminal Procedure provides:

### Relief from Prejudicial Joinder

If the joinder of offenses or defendants in an indictment or information, or a consolidation for trial appears to prejudice a defendant or government, the Court may order separate trials of counts, grant a sever the defendants trials, or provide any other relief justice requires.

//

The essence of the Sixth Amendment right to confrontation is the right to cross-examine a witness. Pointer v. Texas, 380 U.S. 400, 404 (1964). Consequently, the admission of a co-defendant's statement incriminating a defendant where the co-defendant is not available for cross examination constitutes reversible error. Bruton v. United States, 88 S. Ct. 1620 (1967).

More recently in Cruz v. New York, 107 S.Ct. 1714 (1987), the Supreme Court reaffirmed the holding of Bruton and overruled the limiting plurality holding in Parker v. Randolph, 99 S.Ct. 2132 (1979). In so doing, the Court indicated its resolve to continue to uphold Bruton and its commitment to the principle that:

> [w]here two or more defendants are tried jointly, therefore, the pre-trial confession of one of them that implicates the others is not admissible against the others unless the confessing defendant waives his Fifth Amendment rights so as to permit cross-examination. Cruz v. New York, 107 S.Ct. at 1717.

The majority of the government's case against defendant is co-defendant Aponik's statements implicating defendant Espinosa. For defendant Espinosa to have a fair trial and not have his constitutional right to confrontation violated, he must be able to cross-examine co-defendant Aponik.

## CONCLUSION

Defendant Espinosa respectfully request the court to grant his motion for severance from co-defendant Aponik.

Dated this __18__ day of __August__, 2005.

MANTANONA LAW OFFICE
Attorney for **Christopher M. Espinosa**

By: _____
RAWLEN M T MANTANONA, ESQ.
A duly licensed attorney

During the interview, Aponik confessed to arranging for Christopher M. Espinosa, living in Las Vegas, Nevada, to send via the U.S. Mail, multiple parcels, each containing approximately 1-4 ounces of methamphetamine hydrochloride, over the past six months. Aponik also confessed to receiving the parcels, giving the methamphetamine hydrochloride to John Vincent Cruz to sell, receiving the proceeds from the sale of the methamphetamine hydrochloride and returning part of the proceeds to Christopher M. Espinosa in Las Vegas, Nevada. Aponik provided a sworn written statement (Exhibit 8).

On June 18, 2005, subsequent to arriving at the GCQA office in Tiyan, Jarett Elm was also advised of his Miranda Warnings. Elm acknowledged his understanding of the Miranda warnings by signing GCQA Form CQA-14, Custodial Interrogation Miranda Rights. Elm also agreed to make a statement and answer questions by signing the waiver portion of the CQA-14 (Exhibit 9). USICE Special Agent (SA) John Duenas and CQI Bryan Galarpe interviewed Elm.

During the interview, Elm confessed to knowingly participating in a conspiracy to possess methamphetamine hydrochloride by driving Aponik to the USPS GMF to pick up the USPS Express Mail parcel containing methamphetamine hydrochloride sent from Christopher M. Espinosa. Elm also confessed to assisting Aponik to pick up other parcels containing methamphetamine hydrochloride and delivering the methamphetamine hydrochloride contained in the parcels to John Cruz for distribution. Elm further stated that he often accompanied Aponik to wire transfer drug proceeds back to Espinosa. Elm provided an initial written statement (Exhibits 10). As the interview of Elm continued following his initial statement, Elm disclosed additional knowledge of the conspiracy and his involvement. Elm provided a second written statement adding to his original statement (Exhibit 11).

On June 18, 2005, Aponik agreed to further assist in the investigation by placing monitored telephone calls to John V. Cruz and Christopher M. Espinosa. Aponik also agreed to arrange for a controlled and monitored meeting between himself and Cruz to discuss the distribution of the drugs. Aponik said he would arrange for the meeting at a family owned warehouse in Hagatna, Guam. In preparation for the monitored phone calls and the planned meeting, Inspector Hales, GCQA officers and USICE agents traveled to the warehouse owned by Aponik's father and placed a covert camera in the room to monitor the meeting between Cruz and Aponik.

On June 18, 2005, at approximately 1:10 PM, Aponik attempted to call John Cruz to set up a meeting. Cruz could not be reached, however, at approximately 1:20 PM, Aponik called Christopher M. Espinosa. During a brief conversation, Espinosa and Aponik discussed the quantity of drugs sent, the amount of money to be returned to Espinosa and the quality of the drugs sent.





Espinosa also asked Aponik to send four thousand dollars within the next 30 minutes to facilitate the purchase of more drugs. Espinosa asked Aponik to call him back approximately 15 minutes later.

At approximately 1: 40 PM, Aponik received an incoming phone call on his cellular phone from John Cruz. During the conversation, Cruz admits knowledge of a previous shipment of drugs and agreed to meet Aponik to facilitate the distribution of the recently received parcel. Cruz told Aponik that he would meet him in 30 minutes at the family's warehouse in Hagatna.

At approximately 1:55 PM, Aponik received another incoming phone call on his cellular phone from Christopher M. Espinosa. During the conversation, Espinosa told Aponik to send four thousand dollars from the sale of the drugs to Espinosa's address. Espinosa asked Aponik if he had thrown away the box that was sent. Aponik suggested to Espinosa that he would send the money to the address on the box. Espinosa told Aponik not to send the money to the address on the box but told him to send it to the attention of Vincent Lujan, at Espinosa's address, 7443 Cleghorn Canyon Way, Las Vegas, Nevada 89113. Espinosa further discussed sending four more ounces of methamphetamine hydrochloride once he received the money.  

At approximately 2:30 PM, John Cruz arrived at the warehouse. Following a brief meeting and discussion, Cruz was taken into custody and transported to the GCQA offices. Subsequent to arriving at the GCQA office in Tiyan, Cruz was advised of his Miranda Warnings. Cruz acknowledged his understanding of the Miranda warnings by signing PS Form 1067, United States Postal Inspection Service Warning and Waiver of Rights. Cruz agreed to discuss subjects presented and answer questions by signing the waiver portion of the PS Form 1067 (Exhibit 12). Inspector Hales and CQI Craig Camacho interviewed Cruz.

During the interview, Cruz confessed to meeting with Aponik approximately 10-15 times over the past six months. Cruz admitted to receiving methamphetamine hydrochloride from Aponik for distribution. Cruz also admitted to selling the drugs and returning the proceeds from the sale of the methamphetamine hydrochloride to Aponik. Cruz stated that he received both money and drugs from Aponik in return for distributing the drugs. Cruz did not provide a written statement. A photocopy of the Memorandum of Interview is attached (Exhibit 13).

On June 18, 2005, at approximately 4:30 PM, Aponik and Elm were released from custody. John Cruz was booked and confined on an outstanding warrant of arrest for driving under the influence.

On June 21, 2005, Eric Aponik met with Inspector Hales and agreed to make another recorded telephone call to Christopher Espinosa. Aponik called Espinosa and advised Espinosa that he was sending USPS Express Mail Parcel number ER494728343US containing money from the sale of the drugs. Aponik asked Espinosa if when he received the parcel, he would be able to send out a parcel containing more methamphetamine. Espinosa responded by stating that he was taking a trip on Wednesday to pick up more drugs and that Espinosa would send a parcel out to Aponik on Thursday morning.

On June 21, 2005, contact was made with the USPIS in Las Vegas, Nevada. A controlled delivery of the parcel addressed to Espinosa will be planned for Wednesday, June 22, 2005.

Personal and Criminal History

Eric M. Aponik – Is a lifetime resident of Guam and currently resides with his wife and children in a home in Chalan Pago. Aponik's parents reside next door to Aponik and his wife. Aponik works for his father doing a variety of odd jobs. Aponik has no known criminal history.

Jarett J. Elm – Is a lifetime resident of Guam and resides with his girlfriend in a residence in Merizo. Elm's sister is married to Aponik. Elm has previously worked for Aponik's father but is currently unemployed. Elm has no known criminal history.

John V. Cruz – Is a lifetime resident of Guam and currently resides with his girlfriend in a home in Merizo. Cruz's parents also reside in Merizo. Cruz has worked construction in the past, but is currently unemployed. Cruz has multiple previous local arrests and convictions, including one conviction for possession of controlled substance and one for unlawful possession of a firearm.

Christopher M. Espinosa – Currently resides in Las Vegas Nevada. Espinosa has one outstanding local warrant for his arrest issued in 2000.

Witnesses and Their Testimony

C. Hales, U.S. Postal Inspector, P.O. Box 24863, Barrigada, GU 96921-4863, telephone number (671) 735-2124, can testify to all aspects of the investigation.

C. Desoto, Guam Customs and Quarantine Officer, 13-16 A, Mariner Avenue, Tiyan Guam 96921, telephone number (671) 472-7265, can testify to discovery of the parcel and the canine alert which occurred on June 16, 2005.



TERRITORY OF GUAM )
VILLAGE OF _Tiyan_ ) ss:

I, __ERIC APONIK__ , having been first duly sworn
according to law by Postal Inspector __Hales__ depose and say:

I wish to make the following statement of my own free will and accord, without
coercion, threat, or promise of reward. This statement is a voluntary act on my
part, prompted by my desire to assist the United States Postal Inspection Service
and to tell the facts without reward or special considerations:

I GET A CALL FROM CHRIS ESPINOSA, WHO I WAS
INTRODUCED TO BY BRIAN ELM, AND CHRIS JAGER. SINCE
BRIAN IS IN JAIL AND HE WAS DOING THIS FIRST,
HE ASKED ME IF I WANTED TO GET IN ON THIS DEAL,
(FAST MONEY SO WHO WOULDNT), FOR THE PAST SIX
MONTHS I HAVE BEEN RECIEVING PACKAGES TO WHICH
I GIVE OTHER PEOPLE TO SELL, OR DISTRIBUTE, ONE
WOULD BE A GUY CALLED CORY, IN THE PAST 6 MONTHS
I WAS SENT ABOUT 4 OR 5 PACKAGES, EACH PACKAGE
HAVING 1 TO 4 OZ, IN IT. AFTER OPENING IT
I WOULD MAKE A CALL TO CORY AND WE GIVE HIM THIS
STUFF N SELL. IN WHICH CORY WOULD GIVE ME ANYWHERE
BETWEEN 1 TO 2 THOUSAND DOLLARS.

I have read the foregoing statement made by me, consisting of __1__ pages, and I
have been given an opportunity to make corrections. All the facts contained herein
are true to the best of my knowledge and belief.

/s/ _____
Date: 6·15·05

Sworn to and subscribed before
me this date: 6/18/05

/s/ _Craig M Hales_
Postal Inspector

Witnesses:
/s/ _____
Date: 6/18/05

/s/ _____
Date: _____