**MANTANONA**
LAW OFFICE

BankPacific Building, 2nd Floor
South Marine Drive
Tamuning, Guam 96910
Telephone: (671) 646-2001
Facsimile: (671) 646-0777

Attorney for **Christopher M. Espinosa**

# FILED
### DISTRICT COURT OF GUAM

AUG 2 3 2005

### MARY L.M. MORAN
### CLERK OF COURT

## DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **Criminal Case No. 05-00053** |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM IN SUPPORT OF** |
| CHRISTOPHER M. ESPINOSA. et al. ) | **MOTION FOR FRANKS HEARING AND** |
| ) | **TO SUPPRESS EVIDENCE** |
| Defendant. ) | |

## MEMORANDUM OF POINTS AND AUTORITIES

### STATEMENT OF FACTS

On June 16, 2005, a Guam Customs and Quarantine Agency, Drug Detection Dog was alerted to a package. The package was secured until a Federal Search Warrant was acquired.

On June 17, 2005, a Federal Search Warrant was acquired for the package, a search of the package revealed a white Crystalized Substance. The substance was field-tested indicating a positive response for Methamphethamine. The package was then repackaged and put back in the mail under surveillance by Law Enforcement Authorities.

On June 18, 2005, the package was picked up by co-defendants, Eric M. Aponik and Jarret Elm who where taken into custody once the package tracking device indicated that the package had been opened.

//

Co-defendant Aponik was advised of his Miranda Rights and questioned by the Law Enforcement Authorities in regards to the package. On that day Aponik advised Law Enforcement Authorities that he received the package from defendant Espinosa. Aponik with the help of Federal Law Enforcement placed and allegedly received several phone calls from defendant Espinosa on June 18, 2005 and June 21, 2005. See transcripts of telephone calls attached and incorporated defendant Espinosa's Exhibits 1, 2 and 3.

On June 22, 2005, Postal Investigator Federal Agent Gregory D. McGahey in Las Vegas in cooperation with Guam based Federal Law Enforcement applied for a search a warrant for defendant Espinosa's Las Vegas home at 7443 Cleghorn Canyon Way, Las Vegas, Nevada. Agent McGahey submitted to the court an Affidavit of probable cause in support of the request for the search warrant, attached and incorporated as Exhibit "4". Evidence and property was seized from that location. Defendant Espinosa was eventually taken into custody.

Defendant Espinosa was transported back to the District of Guam and was arraigned on July 18, 2005. The matter before the Bar was initially set for trial on August 8, 2005 pursuant to an Order filed and issued on June 24, 2005. An Amended Order in this matter was issued on July 20, 2005 setting the matter for trial on September 6, 2005. Further, the amended Order stated that all pretrial motion shall be filed no later then August 16, 2005.

Defendant's counsel had notice that in discovery package that there was evidence that was derived from a search warrant of the defendant's Las Vegas home. Defendant's counsel notice of the discovery did not contain any of the necessary pleadings and

documents in regards to the search warrant. Defendant's counsel tried to comply with the requirements of the pretrial motion cut off. Defendant's counsel sent a letter to the United States Government requesting the search warrant information. See attached an incorporated defendant's Exhibit "5". Defendant Espinosa's exhibit 5 request to be provided the search warrant information no later than August 5, 2005.

Defendant's counsel also made efforts to directly contact the United States Attorney's Office staff and attorneys to whether he could acquire that evidence. Further, defendant's counsel asked in open court at defendant Espinosa's bail hearing on August 5, 2005, for the requested discovery. Unfortunately, the defendant was not provided the requested discovery and was forced to file a motion to compel discovery filed with this court on August 11, 2005, within the pretrial motion deadline. Unfortunately, Defendant's counsel received the search warrant information on August 17, 2005, after the court ordered motion cut off date. After reviewing the requested discovery defendant's counsel found the basis and necessity for this motion.

## ARGUMENT

"The Fourth Amendment mandates that a defendant be permitted to challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of fact that tend to mislead." United States v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985) (reversing conviction and remanding to the district court holding that defendant had made a substantial showing requiring an evidentiary hearing); see also, United States v. Williams, 737 F.2d594, 604 (7th Cir. 1984). The Supreme Court held, in Franks v. Delaware, 438 U.S. 154 (1978), that allegations of such misstatements or omissions necessitate an evidentiary hearing.

To challenge the veracity of certain factual statements in an affidavit supporting a search warrant, the <u>Franks</u> Court held that a traversal hearing must be held at the defendant's request: where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth was included by the affiant in the warrant affidavit, and if the allegedly false statements are necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. 438 U.S. at 155-156. <u>See</u> <u>also</u> <u>United States v. Johns</u> 851 F.2d 1131 (9th Cir. 1988). The Ninth Circuit employs a two-prong test to determine when a <u>Franks</u> hearing is required. Specifically, the defendant need only make a substantial showing that "(1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause.

The defendant asserts that a Federal Agent with United Postal Inspector Gregory D. McGahey recklessly made several statements that were false and misleading. The defendant further asserts that these false and misleading statements were in regards to vital evidence, which was determinative in establishing a necessary probable cause to search the defendant's residence. It is apparent that Agent McGahey was working with Guam based Federal Authorities. Defendant would assert that Agent McGahey was at least in reckless adopting summaries or opinions of the Guam Agents. Defendant Espinosa asserts this as it is highly unlikely that Agent McGahey actually listened to tape conversations personally.

First, it is important for the defendant to point to court that the package in question which gave rise to this case was not sent from the defendant's residence and location sought for the search warrant, 7443 Cleghorn Canyon Way, Las Vegas, Nevada. The package sender address was 8501 W. University Ave. Las Vegas, Neveda. Defendant Espinosa has no ties to that location. Secondly, the package does not bear the name of the defendant Christopher M. Espinosa or anybody with the Espinosa surname. Third, the speaker being taped never identifies himself in any manner as Christopher Espinosa. Fourth, Defendant Espinosa does not live alone and has several people staying with him for short periods of time. Fifth, Methamphethamine any derivative or street name for the drug is never mentioned on the tape conversations. The agent makes all these major assumptions and **asserts them as fact** to the court in his Affidavit of Probable Cause.

The first major misleading statement contained in the Affidavit of Probable Cause is in regards to conversations between the co-defendant Eric M. Aponik and somebody conversing with Aponik at what is believed to be defendant Espinosa's telephone number in Las Vegas. It is clear that in paragraph ten(10) on page six(6) that the agent makes it clear to the court that Aponik is talking to Espinosa. [1]A review of the transcripts of all the telephone conversation between the two defendants as contained in defendant's exhibit 1, 2 and 3 does not ever identify the individual on the other end of the phone. Further, Agent McGahey states that in paragraph ten(10) of his affidavit that Espinosa told Aponik that he would be getting him more Methamphethamine over the weekend. A clear review of the telephone conversation as contained in Exhibit "2" page 3 in regards to this allegation it is

_____

[1] "During the conversation, allegedly Espinosa and Aponik discussed the quantity and quality of the Methamphethamine Aponik received...Espinosa asserted Aponik to send Four thousand dollars." Espinosa told Aponik that he would get more of the Methampethamine over the weekend.

clear the person speaking does not identify himself. Further, Aponik never ask him to confirm if its was Espinosa. More importantly, there is never any mentioned of Methampethamine, Ice, Crack or any other derivative or street name for Methampethamine. Defendant asserts that this "misrepresentation" to the Magistrates Judge "alone" is dispositive to provide the basis for the search warrant.

In paragraph eleven(11) on page six (6) Agent McGahey again makes further misrepresentations in regards to alleged statements made by Defendant Espinosa and mentions the sending of more Methampethamine. The representations again is misleading the court since defendant is never identified in this conversation and Methampethamine is never mention. See Exhibit "2" page 4 and 5.

In paragraph fourteen(14) where it states that Espinosa told Aponik that he would be going to get more Methampethamine on Wednesday, June 22, 2005. It clear review of the corresponding transcript (see Exhibit "3" page 1 and 2) clearing indicates that there was no mentioned of Methampethamine or identification of Defendant Espinosa.

The agent's investigation indicates that other parties had been living at Defendant Espinosa's Las Vegas Home. Further, defendant asserts that other parties often come and visit and stay for short periods of time at his Las Vegas residence.

The agent's misrepresentations repeated several times in his affidavit would tend to lead a neutral magistrate to believe the evidence characterized was overwhelming and more than sufficient for a search warrant. The government may argue that the errors are inadvertent or that non identification of speakers on taped phone calls or talking in codes is

standard for criminals conducting business. Nonetheless, the government has usurp the neutral magistrates role, job and duty to give the requested weight to the evidence contained in the affidavit. There is no telling how much weight the magistrate would have given the evidence if the government had not been reckless with their representations.

The only other evidence is co-defendant Aponik's statements implicating Defendant Espinosa. That alone is insufficient and the government knew it. There was no further surveillance, no attempted buys, no other information or evidence proving Defendant Espinosa was involved in the drug trade. That is why they needed the telephone conversations to gather evidence to implicate Defendant Espinosa and search his home. Thus, if the court struck out all the misrepresentations, it would see that all the government has was unsubstantiated and uncorrobated statements from Defendant Aponik, insufficient for a search warrant. Only after misrepresenting evidence to the court did the government get evidence from the search that implicating Defendant Espinosa. Evidence acquired wrongfully should be suppressed.

## CONCLUSION

Defendant Espinosa respectfully request the court find that the Postal Agents made false and misleading statements on their affidavit of probable cause and thus, ordering an Franks evidentiary hearing.

Dated this **22** day of **August**, 2005.

MANTANONA LAW OFFICE
Attorney for **Christopher M. Espinosa**

By: _____
RAWLEN M T MANTANONA, ESQ.
A duly licensed attorney

 COPY



6-18-05 Monitored Telephone Calls
0918-1530157-NI(1)
Transcript # 1

JD Special Agent John Duenas
JC: John Cruz
EA: Eric Aponik

JD: Today's date is January, or, correction, June 18, 2005, the time is approximately 1:10 pm. The following is going to be a consensual monitored call to John Cruz at 727-6901 by, ah, Eric Aponik

\* Telephone Rings – No answer – Recorded Female Voice

\* (inaudible)

EA 828-6900

\* Telephone Rings – No answer – Recorded Female Voice

\* Incoming Telephone Call Ring – Call from Christopher Espinosa's Telephone Number

EA Hello.

CE Hello.

EA Prim

CE Pary

EA What's up?

CE What's up dog…(inaudible)

EA Uh, um dud how much did you send?

CE 4

EA 4?

CE Yah

EA Oh, shit, so, how much do you need me to send you to get the next one out, and by when?

CE Oh, dude, if, we want to do the deal this weekend? You need to wire within the next, like 30 minutes or an hour

1

| EA | About how much, though? |
|----|-------------------------|
| CE | 4 - exact, cause I'm gonna give him an extra, the guys...(inaudible)...200 bucks to pick it up |
| EA | Okay, so I need to send at least 4 grand by, between, the next 30 minutes? |
| CE | Yah |
| EA | Okay. Let me, ah, let me see what I can do with this, and I'll give you a call back, about maybe 15, 20 minutes, and I'll, I will be able to do it. |
| CE | Okay was it good, or what? |
| EA | Um, I dunno. Ah, the guy that I made try it yea said it was excellent |
| CE | (Laughs.) Okay. |
| EA | All righty? |
| CE | Okay |
| EA | Um, so, okay. Ah, |
| CE | Call me back, call me back at my, my cell number |
| EA | Okay |
| CE | So I can give you his name |
| EA | Okay |
| CE | Okay |
| EA | Okay bye |
| CE | Shoot. |
| JD | It's 1:20 pm. June 18, 2005. That was a phone call from Chris Espinosa to Eric Aponik |

2



6-18-05 Monitored Telephone Calls
0918-1530157-NI(1)
Transcript # 2

CH:    Inspector Hales
JD:    Special Agent Duenas
EA:    Eric Aponik
CE:    Christopher Espinosa


CH:    Okay, you laughed when you said the guy tried...

(inaudible)

EA     Okay (inaudible) time is 1:30 pm  I'm calling 727-6901

\*      Telephone Rings – (no answer)

EA     Okay,1:31, Trying 828-6900

\*      Telephone Rings – (no answer)

EA     Okay, now, I gotta find this....I gotta find the number first.  Ah,

CH     Don't be shy about what you say or what you talk about.

EA     Okay.  Okay, it's now 1:40.  I'm calling Chris Espinosa at 702-591-2231.

\*      Telephone Rings

CE     This is Chris.  I'm not in.  Leave a message (recording)

\*      Incoming Telephone Call Ring – Call from John Cruz's Telephone Number

EA     Hello.

JC     Hello!

EA     Eh!  What's up, where you been?

JC     I was sleeping!

EA     Sleeping?  Why the hell you sleeping?

JC     Lanayet

EA     Eh, um, dude, remember the last one, that was kinda fucked up

JC     Yah

EA     Eh – okay, ah, I got the new one today

1

| JC | No way |
|---|---|
| EA | Yah, um, you wanna head up and |
| JC | Shoot, shoot, shoot |
| EA | How fast, how fast can you get here? |
| JC | Shit, 30 minutes  (laughs) |
| EA | About 30 minutes? |
| JC | my body is aching bro |
| EA | Okay, so, look, eh, ah, hurry up! |
| JC | Okay |
| EA | Okay |
| JC | Shoot |
| EA | Shoot |
| * | Incoming Telephone Call Ring – Call from Christopher Espinosa's Telephone Number |
| EA | Prim |
| CE | Yo! |
| EA | (inaudible)..I was trying to call you. |
| CE | Sorry man |
| EA | Eh – I might not be able to make the money today, bro |
| CE | Okay, okay |
| EA | Um, is there any way you can cover it and then, uh, send it out still, or |
| CE | (inaudible)…I'm broke dog.  I don't got shit.  I'm just waiting for the cash from this I don't have nothing. |
| EA | All righty.  Um, but I tell you what, how about on, um, how about Monday, bro? I'll be able to hit you up Monday? |
| CE | Yah…inaudible)…hang on, hang on |

2

\*      Long Pause

CE     Hello.

EA     Eh-

CE     Yah

EA     So, I going send you four thousand and you going send me the same thing, right, the

CE     Yah, but I…dude I have to wait till the weekend dog, cause, it's what I'm doing this weekend, I gotta wait till next weekend.

EA     Okay, how about, um, if I can get it anytime sooner, you wanna give me the info and where would I send it to, or

CE     Yah…(inaudible)…ah, dude, you didn't throw away the box, did you?

EA     No

CE     Okay, cool. Um, when you get the cash,

EA     Yah

CE     My money, just FedEx it to my address

EA     The address that's on the box right now?

CE     No, no, no, no. Here I'll give it to you right now.

EA     Okay

\*      Long Pause

CE     Hello?

EA     Eh!

CE     Yah

EA     Yah, so what's the address

CE     Okay, ah, put um, attention Vincent Lujan

EA     Attention who?

CE     Vincent Lujan

EA     Vincent Lujan.

CE     Yah

3

EA     Okay

CE     You put 7, 4, 4, 3

EA     7, 4, 4, 3

CE     Cleghorn Canyon Way

EA     Ah, which Canyon Way?

CE     C, L, E, G

EA     C, E, L G

CE     Yah, C, L, E, G

EA     C, E or C, L, E, G

CE     H, O, R, N

EA     H, O, R, N

CE     Canyon Way

EA     Canyon Way?

CE     Yah.  Las Vegas, NV 89113

EA     89113.  Las Vegas.  Okay.  Ah, so the, for the 4 grand, ah, but do I have to, do I have to send, so I have to cover the ah, I have to cover the, oh, no, shit I'm gonna FedEx it to you, right?

CE     Yah

EA     So,

CE     … you can FedEx my cash, right?  The, everything?

EA     Yah, I guess, so, but the 4, okay, shit how about I do the 4 first?

CE     The 4 first?

EA     Yah,

CE     Oh to wire it?

EA     Yah

CE     It doesn't matter, though, cause I'm…(inaudible)…into the weekend

4

EA  Oh, shit!  Okay.  So then, um, so what's, what's the total on that one gonna be?

CE  Uh, I sent you 4, so just give me 16 half...(inaudible)

EA  15?  16?

CE  Yah, 16, 16

EA  16

CE  Yah

EA  And then, you're gonna send me the other 4?

CE  Yah

EA  Okay, all right, all right.  So, I'll give you a call as soon as I, um as soon as I send it.

CE  Okay

EA  Okay.  Shoot.

CE  Eh, bro.  Make sure FedEx it overnight

EA  FedEx overnight?  Okay.  One-day delivery

CE  Yah

EA  Okay

CE  Okay

EA  Shoot

CE  Shoot

JD  1:56 pm, June 18, 2005.  The preceding was a phone call, incoming call from Chris Espinosa to Eric Aponik

EA  Okay.  2:08.  Calling 828-6900.

*   Telephone Rings – No answer

EA  2:09.  Calling 727-6901

*   Telephone Rings – No answer – Recorded Female Voice

EA  727-6901.  And the time is 2:20, oh, 2:19 (inaudible)

*   Telephone Rings – No answer – Recorded Female Voice

5

JD      No answer on the his cell.

EA      No answer on his cell.  Trying his house.  2:19 pm.  828-6900.

*       Telephone Rings

EA      Hello  Hello

*       Telephone Rings – No answer – Recorded Female Voice

*       Incoming Telephone Call Ring – Call from Christopher Espinosa's Telephone
        Number

EA      Hello.

CE      Pary

EA      Yah, what's up?

CE      Hey, ah, I talk to home boy he said he'll be back by Tuesday

EA      Okay

CE      And, we can go if, if we're done, you, today you can make the trip Wednesday
        night, you'd be back by Thursday morning, then I can mail it out by Thursday
        morning.

EA      All right, all righty.  About how much?  The, the whole 4, right?

CE      Yah, oh yah.

EA      Okay, okay.  All righty, so

CE      Okay

EA      I'll hit you up next week then

CE      Okay.  ah call me Monday night dog

EA      Monday?

CE      You ship it out Monday?  No?

EA      Ah, more than likely, yah.  I will be able to do that by Monday

CE      Okay

EA      Okay

CE      Okay, shoot

6

EA    Shoot

JD    2:22 pm.  June 18, 2005.  The preceding was an incoming call from Chris
      Espinosa to Eric Aponik.



06-21-05 Monitored Telephone Call
0918-1530157-NI(1)
Transcript # 3

CH    Postal Inspector Craig Hales
EA    Eric Aponik
CE    Christopher Espinosa

CH    This is U.S. Postal Inspector Craig Hales.  The time is 11:16 am on June 21st,
      2005.   This will be a recorded telephone conversation between Eric Aponik and
      Christopher Espinosa.  The telephone number being called is area code 702,
      591-2221.

*     Phone rings

CE    Par

EA    Eh!  K, um

CE    (inaudible)...Dog is everything okay?

EA    Yah!  I just at the, Post Office, um, shit, dude FedEx couldn't guarantee me a
      quick delivery, bro, so I did it through the Post Office, Express Mail, guaranteed
      to be at you by about 3:00 pm Wednesday

CE    OK Cool Cool Shoot Bro...(inaudible)

EA    You need, you need tracking number?

CE    Yah, yah, here

EA    Okay.  You got a pen?

CE    Yah...(inaudible)...Bro...(inaudible)

EA    Okay

CE    (inaudible)...I wasn't sure, man

EA    Okay, ah, you got, you gonna have anything to send my way as soon as you
      grab this, or

CE    now what you say?

EA    Are you gonna have anything where you can shoot out my way as soon as
      possible?

CE    What you mean?

1

EA    You know, are you going to have anymore, are you going to be able to send it as quick as possible, or

CE    Yah, yah, yah, cause I'm, we're supposed to take the trip Wednesday, but I'm, I keep trying to call you, and then I don't know what happened so I told them to hold up, I called them today and told them to hold up

EA    Okay so, you ready for the tracking number?

CE    Yah, Yah

EA    Okay. E, R

CE    E, R

EA    4, 9, 4

CE    4, 9, 4

EA    7, 2, 8

CE    7, 2, 8

EA    3, 4, 3    U.S.

CE    3, 4, 3, U.S.

EA    Yah.

CE    ER 494 728 343 US?

EA    Yah, and you'll be seeing it by Wednesday. 3 o'clock.

CE    (inaudible)...right?

EA    Huh? Yah.

CE    (inaudible)...I'll be sending you 4, Wednesday night when I make the trip. Thursday morning I should have it out.

EA    All righty, bro

CE    Alright Big Dog

EA    Okay, shoot

CE    Shoot

EA    Shoot Shoot

2

DANIEL G. BOGDEN
United States Attorney
PATRICK WALSH
Assistant United States Attorney
333 Las Vegas Boulevard South
Suite 5000
Las Vegas, Nevada 89101
Telephone (702) 388-6050
Facsimile: (702) 388-6698

FILED

JUN 22 1 33 PM '05

U.S. MAGISTRATE JUDGE

BY_____

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | MJ-S-05-0517-LRL |
| vs. | ) | |
| PREMISES LOCATED AT 7443 CLEGHORN CANYON WAY, LAS VEGAS, NEVADA CITY OF LAS VEGAS, COUNTY OF CLARK STATE OF NEVADA | ) ) ) ) ) ) ) ) | |

------------------------------------------------------)

### AFFIDAVIT

I, Gregory D. McGahey, being duly sworn, hereby depose and say:

    1.      I am a Federal Agent with the United States Postal Inspection Service and have been so employed since 2003. I am currently assigned to the Los Angeles Division,

1

Las Vegas Domicile, and am responsible for investigating controlled substance violations involving the United States Mails. In this capacity I have participated in numerous investigations involving the transmission of controlled substances or the proceeds from the sale of controlled substances through the United States mails. I have received specialized training in the investigation of controlled substances in the Unites States mails. Prior to being a United States Postal Inspector I was a Police Officer for 12 years. During that time I worked on a street crimes unit that investigated the distribution of controlled substances. I was also a detective assigned to the major crimes/homicide unit and investigated several drug related homicide deaths. I have received training on the identification of controlled substances and attended an 80 hour drug investigators course presented by the Drug Enforcement Administration.

2. This affidavit is made in support of an application for a search warrant for 7443 Cleghorn Canyon Way, Las Vegas, Nevada, described in Attachment A., (the target address) which is believed to contain controlled substances, proceeds from the distribution of controlled substances and documentation supporting the distribution of controlled substances.

3. On June 16, 2005, Guam Customs and Quarantine Agency (GCQA) Officer One (CQ1) Christopher J. De Soto, a member of the GCQA/U.S. Postal Inspection Service (USPIS) task force, conducted inspections of incoming U.S. Mail at the U.S. Postal Service (USPS), Guam Main Facility (GMF) in Barrigada, Guam. During the inspection, CQ1 De

2

Soto identified a USPS Express Mail parcel number CD19685963KUS arriving from "Carmen Manibusan, 8501 W University Ave, Las Vegas, NV 89113" for delivery to "Jena Aponik, P.O. Box 26043 GMF Guam 96921" (Exhibit 1). The parcel was presented to GCQA Drug Detector Dog (DDD) Boyar for further examination. Upon examination, DDD Boyar alerted to the parcel, indicating the presence of an odor of controlled substances. The parcel was secured by CQ1 De Soto in the USPS GMF pending the application of a federal search warrant.

4. On June 17, 2005, Inspector Hales conducted follow up investigation of the parcel. It was discovered that the address "8501 W University Ave, Las Vegas, NV 89113" is the address for an apartment complex in Las Vegas and that the apartment number was missing from the USPS Express Mail label. It was discovered that the name on the USPS Express Mail label, "Carmen Manibusan", is not a name associated with the apartment complex.

5. On June 17, 2005, CQ1 De Soto applied for and was granted a federal search warrant for the USPS Express Mail parcel number CD19685963KUS. The parcel was transported to GCQA offices and opened by Inspector Craig Hales and CQ1 Craig Camacho. The parcel contained clothing, CD-ROM's, video tapes and a magazine. Secreted inside the clothing was one Zip Lock baggie containing another heat sealed baggie of a white crystal substance. The substance was field tested and indicated a

3

positive response for methamphetamine hydrochloride. The gross weight of the substance was approximately 110 grams.

6. On June 18, 2005, Inspector Hales, GCQA officers and U.S. Immigration and Customs Enforcement (USICE) agents met and briefed for a controlled delivery of the package. The parcel was transferred to Inspector Hales and placed in the USPS GMF in preparation for delivery. Inspector Hales and CQII Erwin Fejeran maintained surveillance of the parcel inside the USPS GMF. At approximately 9:30 AM a male approached the parcel pick-up window at the USPS GMF and requested to pick up the Express Mail parcel. The male accepted the parcel and completed and signed both the USPS Form 3849, Delivery Notice/Reminder/Receipt and USPS Form 5625-C, Mailing Label, Service Analysis and Proof of Delivery (Exhibit 5 & 6). The male, later identified as Eric Aponik left the USPS GMF and was placed under surveillance by GCQA officers outside the USPS GMF.

7. After picking up the parcel at the USPS GMF, Eric Aponik exited the postal facility and entered the passenger's side of a grey Toyota Camry. The vehicle traveled to the Mobile Gas Station in Barrigada Heights. At approximately 9:35 AM, the tracking device indicated that the parcel had been opened. A team of officers from GCQA approached the vehicle and took Eric Aponik and Jarett Elm, the driver of the vehicle into custody. Both APONIK and ELM were transported to the GCQA office in Tiyan, Guam.

8. Subsequent to arriving at the GCQA office in Tiyan, APONIK was advised of his Miranda Warnings. APONIK acknowledged his understanding and waiver of the

4

Miranda warnings by signing a United States Postal Inspection Service Warning and Waiver of Rights Form.

9.     APONIK stated this he was involved in the distribution of methamphetamine. APONIK stated that the source of the methamphetamine is Christopher M. Espinosa who lives in Las Vegas, Nevada. APONIK stated that when he needed to obtain methamphetamine he would call ESPINOSA on the telephone at 702-591-2221 and order the methamphetamine. APONIK would then wire transfer money to ESPINOSA. ESPINOSA would then send the methamphetamine to APONIK via the U.S. Mail. APONIK also confessed to receiving the parcels, giving the methamphetamine hydrochloride to John Vincent Cruz to sell, receiving the proceeds from the sale of the methamphetamine hydrochloride and returning part of the proceeds to ESPINOSA in Las Vegas, Nevada. APONIK advised that he has been purchasing methamphetamine from ESPINOSA for the past six months and averages about 3-4 packages a month each containing approximately 4 ounces of methamphetamine. APONIK advised that prior to him purchasing methamphetamine from ESPINOSA, ESPINOSA was the supplier of methamphetamine for other individuals on the island of Guam. APONIK was introduced to ESPINOSA 6 months ago and the methamphetamine business relationship began. APONIK advised that from the time he would place an order with ESPINOSA to the time that APONIK would receive the drugs on the island was typically only 2 to 3 days.

5

10. On June 18, 2005, APONIK agreed to further assist in the investigation by placing monitored telephone calls to ESPINOSA in Las Vegas, Nevada. On June 18, 2005, at approximately 1:20 PM, APONIK called ESPINOSA. During the conversation, ESPINOSA and APONIK discussed the quantity and the quality of the methamphetamine APONIK had received. APONIK inquired about getting more methamphetamine. ESPINOSA asked APONIK to send four thousand dollars to facilitate the purchase of more drugs. ESPINOSA told APONIK that he would be getting more of the methamphetamine over the weekend. The conversation ended.

11. At approximately 1:55 PM, APONIK received an incoming phone call on his cellular phone from ESPINOSA. During the conversation, ESPINOSA told APONIK to send the four thousand dollars to ESPINOSA's address via Federal Express. ESPINOSA asked APONIK if he had thrown away the last box that he had sent. APONIK asked ESPINOSA if he should send the money to the return address on the box. ESPINOSA told APONIK not to send the money to the return address but to sent it to ESPINOSA'S address attention of Vincent Lujan at, 7443 Cleghorn Canyon Way, Las Vegas, Nevada 89113 (target address). ESPINOSA stated he would send four more ounces of methamphetamine once he received the money.

12. On June 20, 2005 Postal Inspector Greg McGahey of the Las Vegas, Nevada office verified that Christopher Espinosa is receiving mail at 7443 Cleghorn Canyon Way, Las Vegas, Nevada 89113 (target address). A records check through the Nevada

6

Department of Motor Vehicles shows that Chrisopher Espinosa has a driver license and identification card issued on January 19, 2005. The address information for the license and identification is 7443 Cleghorn Canyon Way, Las Vegas, Nevada 89113.

13.    Further investigation revealed that the package # CD19685963KUS that contained the methamphetamine was shipped from the Post Office located at 1001 E. Sunset Rd. Las Vegas, NV. There are two Post Offices near 7443 Cleghorn Canyon Way, 1001 E. Sunset Rd and 3375 S. Rainbow. Although the Post Office at 3375 S Rainbow is physically closer to the Cleghorn address, the Post Office at 1001 E. Sunset Rd is more convenient and provides a direct access via the interstate highway.

14.    On June 21, 2005 APONIK telephoned ESPINOSA and advised him that he had shipped the money via U.S. Mail and that it should be arriving sometime on Wednesday June 22, 2005. ESPINOSA told APONIK that he was going to get more methamphetamine on Wednesday, June 22, 2005 and mail it to APONIK the following day.

15.    Based on these facts, I believe there is probable cause to believe that the residence at 7443 Cleghorn Canyon Way, Las Vegas, Nevada described in Attachment A contains controlled substances, constituting evidence of violations of Title 21, United States Code, Sections 841(a) (1), Possession with Intent to Distribute a Controlled Substance, and 843(b), Unlawful Use of a Communication Facility to Facilitate the

7

Distribution of a Controlled Substance and Title 18 United States Code 1956 and 1957 Money Laundering.

16.    Your affiant respectfully requests the issuance of a Search Warrant for 7443 Cleghorn Canyon Way, Las Vegas, Nevada described in Attachment A. for the items described in Attachment B.


_____
Gregory D McGahey
United States Postal Inspector

Subscribed and sworn to before me
on this 22nd day of June _____, 2005

LAWRENCE R. LEAVITT
_____
UNITED STATES MAGISTRATE JUDGE

8



**MANTANONA**
LAW OFFICE
A PROFESSIONAL CORPORATION

Rawlen M.T. Mantanona
- Attorney at Law

August 1, 2005

COPY

**Via Hand Delivery**

Russell C. Stoddard
First Assistant U.S. Attorney
District of Guam
Sirena Plaza, Suite 500
108 Hernan Cortez
Agana, Guam 96910

**Re:** **United States v. Christopher M. Espinosa; CR05-00053**

Dear Russ,

My office served your office on behalf of my client, a request for discovery on your office on July 22, 2005. A review of the discovery indicates that some of evidence that you possess was received pursuant to a search warrant executed at my client's home in Las Vegas. The discovery in this matter is missing the Application for the search warrant, the search warrant, and the affidavit of probable cause in support of the search warrant, and lastly the return of the search warrant. A review of these documents is necessary to determine whether the evidence in this matter was legally obtained and or admissible.

Thus, I would greatly appreciate if you could forward to my office as soon as possible no later then the close of business of Friday, August 5, 2005 these documents. If I do not receive the documents as requested in this letter, if not, I would be forced to file a motion to compel for these documents.

If you have any questions, please feel free to contact me at my office.

U.S. ATTORNEY'S OFFICE
DISTRICTS OF GUAM & NMI

AUG 0 2 2005

R E C E I V E D

Si Yu' os Ma' ase
MANTANONA LAW OFFICE

RAWLEN M T MANTANONA, ESQ.
A duly licensed attorney

RM/cdm

GCIC Building, Suite 601B 414 West Soledad Avenue Hagåtña, Guam 96910
Telephone 671 472-3666 Facsimile 671 472-3668 Email rmlaw@guam.net