CIVILLE & TANG, PLLC
SUITE 200, 330 HERNAN CORTEZ AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891/472-8868
FACSIMILE: (671) 472-2601/477-2511

*Attorneys for Defendant*
*Christopher M. Espinosa*



FILED
DISTRICT COURT OF GUAM

AUG 23 2006

MARY L.M. MORAN
CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT

# FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CRIMINAL CASE NO.05-00053-001 |
| Plaintiff, | ) |
| vs. | ) |
| | ) DEFENDANT'S ACCEPTANCE OF |
| | ) PRESENTENCE REPORT AND |
| CHRISTOPHER M. ESPINOSA, | ) SENTENCING MEMORANDUM |
| Defendant. | ) |

The defendant accepts the findings in the Presentence Investigation Report with one exception:

**I. Response to Presentence Investigation Report.**

**Paragraph 49.** Mr. Espinosa disputes sweeping nature of the finding that he was "the source of supply in Las Vegas, Nevada for a methamphetamine distribution organization of Guam." Mr. Espinosa admits that he sent drugs to Guam, but he denies that he was an organizer or leader of a drug ring. He became involved in sending methamphetamine to Guam through co-defendant Jonathan Canovas. The relationship between Mr. Canovas and Mr. Espinosa began in 2003 or 2004 when they met while Canovas was dating Espinosa's cousin. Eventually, Espinosa learned that Canovas was dealing drugs and they began to talk. In late 2004, Espinosa agreed to have money wire transferred to his account. This money was payment for drugs that Canovas had

shipped to Guam. Espinosa received the money and gave it to Canovas, and in exchange received a $200 commission per transfer. This arrangement continued for about four months. During this time, Espinosa did not know any of the recipients of the drugs on Guam, or the people who sent him money. His only contact was with Canovas.

In the spring of 2005, Canovas and Espinosa agreed that Canovas would continue to organize the transactions, and makes the contacts with his buyers on Guam, but that Espinosa would send the drugs and receive a larger share of the proceeds of the sale. This arrangement lasted about two months. At that point Espinosa and Canovas had a falling out. Canovas then gave Espinosa the name and contact information for Aponik, and Espinosa made a direct deal with Aponik. Under this arrangement, Espinosa bought drugs in Las Vegas and made two shipments to Aponik on Guam, at least one of which was intercepted leading to his arrest.

Espinosa never met or had any communication with co-defendants Brian Elm or John C. Cruz. Espinosa's only contact with co-defendant Jarrett Elm was to receive a payment from Jarrett Elm, who had been given the wire transfer instructions by Canovas. To whatever extent the Elm defendants, Aponik and Cruz were involved, Espinosa believes that they had been recruited and directed by Jonathan Canovas from a time before Espinosa had met Canovas.                I

**II. Sentencing Recommendation**.

Mr. Espinosa comes before the Court on a Rule 11 (c)(1)(C) "C plea." Under the plea agreement, and subject to Court approval, the parties have stipulated to a prison term of 87 months. The C plea was the result of extensive pretrial negotiations between the United States and Mr.

2

Espinosa, and based on exhaustive discussions of the evidence likely to be adduced at trial, and the value of cooperation provided by Mr. Espinosa. The defendant asks the Court to approve the plea agreement and impose the 87 month sentence specified in the plea agreement.

The PSR sets forth in detail Espinosa's frequent contact with the criminal justice system, and the difficulties he has had staying out of trouble. While there are events and circumstances in his upbringing which may explain some of his behavior (abandoned by father, overly permissive substitute father figure, mother in an out of numerous relationships), see, PSR ¶¶ 86 - 91, shortcomings in his upbringing do not excuse his behavior. Christopher is just coming to the realization that a warped family life growing up does not excuse bad behavior as an adult. His extensive time of pretrial incarceration seems to have served as a wake up call that he needs to change his behavior. Since being released pending sentencing, Mr. Espinosa has been employed on a daily basis at his step-father's business, he has stayed physically active and, most importantly, he has stayed out of trouble. These are perhaps small steps in the right direction, but they are nonetheless indicators that Mr. Espinosa is learning to control his behavior. The prison term of seven years and three months contemplated under the plea agreement will further underscore this message, as well as serve as a deterrent to others who may be tempted by the path of easy money.

Mr. Espinosa is hoping to emerge from prison with a fresh start, albeit with the disabilities attendant to a convicted felon. To this end, he is in the process of entering into an agreement with

///

///

///

3

local prosecutors which will resolve pending local charges. PSR ¶¶ 82-83. By doing so, Mr. Espinosa hopes that when he emerges from prison in approximately 2012, he will be able to start building some type of relatively normal life.

    Respectfully submitted this 25th day of August, 2006.

                                **CIVILLE & TANG, PLLC**

                                By_____
                                **G. PATRICK CIVILLE**
                                *Attorneys for Defendant*
                                *Christopher M. Espinosa*